IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN KNUDSEN and
BRITTANY KNUDSEN,

        Plaintiffs,

v.

RONALD MARK CANTRELL and
SHAUN WHITESELL,

        Defendants.

Case No. 21-2144-DDC-TJJ

**MEMORANDUM AND ORDER**

In 2020, defendant Ronald Mark Cantrell shot and killed Nala, the dog belonging to plaintiffs John and Brittany Knudsen. The Knudsens posted about the incident on Facebook and that post went viral. After the post was widely shared, Cantrell received threats, so he called the police. Defendant Shaun Whitesell, a police officer, went to the Knudsens' home, and told Brittany Knudsen to take down the Facebook post. Now, the Knudsens sue Cantrell and Whitesell. Against defendant Whitesell, plaintiffs bring two claims under 42 U.S.C. § 1983 for violating their constitutional rights—specifically, plaintiffs allege Whitesell retaliated against them for exercising their First Amendment rights. Against defendant Cantrell, plaintiffs assert state law claims for assault and conversion.

This matter is before the court on defendant Whitesell's Motion for Judgment on the Pleadings (Doc. 6). Whitesell argues he is entitled to qualified immunity on plaintiffs' § 1983 claims. The court agrees; it grants the motion in part and dismisses Whitesell. With the federal claims dismissed, the court declines to exercise supplemental jurisdiction over plaintiffs'

remaining state law claims against Cantrell.  Finally, the court denies Whitesell's request in his Motion for Judgment on the Pleadings (Doc. 6) to recover his attorney's fees and costs.  The court explains these decisions, below.

I.      **Factual Background**

Plaintiffs John and Brittany Knudsen, a married couple, reside in Spring Hill, Kansas. Doc. 1 at 2 (Compl. ¶ 10).  Plaintiffs owned a Great Dane dog named Nala.  *Id.* (Compl. ¶ 11). On March 29, 2020, Nala got out of plaintiffs' house.  *Id.* at 3 (Compl. ¶ 15).  Defendant Mark Cantrell and his wife, Jessica, were walking their dogs near plaintiffs' house and Nala approached them.  *Id.* (Compl. ¶¶ 14, 16, 17).  Defendant Cantrell shot Nala with a firearm.  *Id.* (Compl. ¶ 18).  Nala loped, grievously wounded, toward plaintiffs' property, and John Knudsen saw that Nala had sustained a gunshot wound.  *Id.* at 4 (Compl. ¶ 24).  John Knudsen took Nala to the emergency veterinarian, where plaintiffs chose to have Nala humanely euthanized.  *Id.* at 4–5 (Compl. ¶¶ 28, 32).

While John Knudsen took Nala to the veterinarian, Brittany Knudsen called the police. *Id.* at 5 (Compl. ¶ 33).  Defendant Shaun Whitesell responded to her call, along with other officers from the Spring Hill Police Department.  *Id.* (Compl. ¶ 35).  Whitesell investigated the shooting, interviewed the Cantrells, and took written statements.  *Id.* (Compl. ¶ 35).  The Kansas Standard Offense Report prepared about the incident originally listed the Knudsens as the victims and defendant Cantrell as the suspect.  *Id.* (Compl. ¶ 36).  Later, defendant "Whitesell changed the report to reflect that Cantrell was the victim."  *Id.* (Compl. ¶ 36).

Over the next two weeks, plaintiffs attempted to access the police reports and witness statements.  *Id.* (Compl. ¶ 37).  They were denied access.  *Id.* at 6 (Compl. ¶ 38).  And, plaintiffs were informed that defendant "Cantrell would likely not be charged[.]"  *Id.* (Compl. ¶ 38).

2

Plaintiffs posted information about the incident publicly on Facebook on April 15, 2020. *Id.* (Compl. ¶ 38). "The Facebook post described the events[,] . . . identified Cantrell as the shooter, and identified that he was a police officer for the Olathe, Kansas Police Department[.]" *Id.* (Compl. ¶ 39). The Facebook post went viral. *Id.* (Compl. ¶ 40). Defendant Cantrell called the Spring Hill Police Department on April 19, 2020 "about the Facebook post, because he had received a threat from a person unrelated to Plaintiffs." *Id.* (Compl. ¶ 41).

Defendant Whitesell responded to defendant Cantrell's call and met with defendant Cantrell and his wife. *Id.* (Compl. ¶ 42). The Cantrells wanted plaintiffs charged. *Id.* (Compl. ¶ 42). Whitesell told the Cantrells that plaintiffs "would be ticketed for harassment and/or witness intimidation." *Id.* (Compl. ¶ 42). Later, Whitesell visited plaintiffs' home and discussed the Facebook post with plaintiff Brittany Knudsen. *Id.* at 6–7 (Compl. ¶ 44). Whitesell told Brittany Knudsen the post was "causing problems, and told her it should be taken down." *Id.* (Compl. ¶ 44). Plaintiff John Knudsen was not at home when Whitesell came to the home. But the Knudsens' Ring Doorbell camera captured the interaction and Mr. Knudsen watched (and heard) the exchange through Ring Doorbell's mobile application. *Id.* at 6–7 (Compl. ¶¶ 44, 45).

After the exchange between Whitesell and Brittany Knudsen ended, John Knudsen "called his wife in a panic to ask about the interaction and to determine if they were in any legal trouble." *Id.* at 7 (Compl. ¶ 49). Brittany Knudsen "frantically called legal counsel[.]" *Id.* (Compl. ¶ 49). Brittany Knudsen felt "shaken, scared, and seriously considered removing the Facebook post." *Id.* at 7–8 (Compl. ¶ 50).

**II.   Legal Standard**

Defendant Whitesell has filed a Motion for Judgment on the Pleadings (Doc. 6). Fed. R. Civ. P. 12(c) governs this motion. Courts evaluate a Rule 12(c) motion under the same standard

3

used to evaluate a motion to dismiss under Rule 12(b)(6). *Borde v. Bd. of Cnty. Comm'rs of Luna Cnty., N.M.*, 514 F. App'x 795, 799 (10th Cir. 2013) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

To consider the motion, the court begins with the requirements imposed by Fed. R. Civ. P. 8(a)(2). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although Rule 8 "does not require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action'" which, as the Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the factual allegations in the complaint are true. *Id.* (citing *Twombly*, 550 U.S. at 555). But, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

4

at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

**III.    Analysis**

Count I of plaintiffs' Complaint asserts a § 1983 claim against defendant Whitesell for "Retaliation in Violation of Plaintiff Brittany Knudsen's First Amendment Rights[.]"  Doc. 1 at 7–8 (Compl. ¶¶ 46–55).  Count II asserts a § 1983 claim against defendant Whitesell for "Retaliation in Violation of Plaintiff John Knudsen's First Amendment Rights[.]"  *Id.* at 9–10 (Compl. ¶¶ 56–65).  Specifically, the Complaint alleges that Whitesell retaliated against plaintiffs for exercising their First Amendment rights when he visited plaintiffs' home, discussed the Facebook post with Brittany Knudsen, and "indicated that it was causing problems, and told her it should be taken down[.]"  *Id.* at 6–7 (Compl. ¶ 44).  Plaintiff John Knudsen wasn't home for the encounter, but "was forced to observe remotely via their Ring doorbell camera[.]"  *Id.* at 9 (Compl. ¶ 57).  Count III asserts a state law claim against defendant Cantrell for assaulting plaintiff Brittany Knudsen.  *Id.* at 10–12 (Compl. ¶¶ 66–75).  Count IV asserts a state law claim against defendant Cantrell for assaulting plaintiff John Knudsen.  *Id.* at 12–13 (Compl. ¶¶ 76–84).  And, Count V asserts a state law claim for conversion, asserting defendant Cantrell converted plaintiffs' property.  *Id.* at 13–14 (Compl. ¶¶ 85–92).

Defendant Whitesell filed a Motion for Judgment on the Pleadings (Doc. 6), asking the court to dismiss him from the action because he is entitled to qualified immunity on the claims

asserted by Counts I and II. To state plausible First Amendment retaliation claims in Counts I and II, plaintiffs must plead facts capable of supporting a finding or inference:

> (1) that [they were] engaged in a constitutionally protected activity; (2) that a defendant's action caused [them] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to [their] exercise of First Amendment speech rights.

*Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

The court begins with the qualified immunity doctrine, deciding whether defendant Whitesell is entitled to qualified immunity against plaintiffs' First Amendment retaliation claims in Counts I and II. Then, after concluding that defendant Whitesell is entitled to qualified immunity, the court considers whether it should exercise supplemental jurisdiction over plaintiffs' remaining state law claims. Last, the court considers whether defendant Whitesell is entitled to recover his attorneys' fees and costs under 42 U.S.C. § 1988.

### A.     Whether Defendant Whitesell is Entitled to Qualified Immunity

Defendant Whitesell argues he is entitled to qualified immunity. An officer sued in his individual capacity under § 1983 is entitled to qualified immunity unless plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Addressing the clearly established question first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question." *Weise v.*

*Casper*, 593 F.3d 1163, 1166–67 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 232). The court, heeding the Supreme Court's directive to "think hard, and then think hard again, before turning small cases into large ones[,]" addresses the clearly established question first. *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

### 1. Clearly Established Legal Standard

Defendant Whitesell is entitled to qualified immunity if clearly established law does not show that his conduct—going to the Knudsens' home and telling them to remove their Facebook post—violated the First Amendment. Qualified "immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson*, 555 U.S. at 231). Qualified "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix*, 577 U.S. at 11). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" *Wesby*, 138 S. Ct. at 589–90 (quotation cleaned up) (first citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); then citing *al-Kidd*, 563 U.S. at 741–42). That authority usually takes the form of case law. "Ordinarily, a plaintiff may satisfy this clearly-established-law standard by identifying an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."

7

*Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation cleaned up).  This standard doesn't require a perfect match in the form of "a case directly on point," but plaintiffs must provide a close match— "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

"This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas*, 142 S. Ct. at 8 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).  The Supreme Court has emphasized that "'clearly established law' should not be defined 'at a high level of generality[.]'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742); *see also Bond*, 142 S. Ct. at 11 ("We have repeatedly told courts not to define clearly established law at too high a level of generality.").  Plaintiffs cannot "'alleg[e] violation of extremely abstract rights.'" *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742); *see also White*, 137 S. Ct. at 552 ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.") (quoting *Anderson*, 483 U.S. at 640).

### 2. Whether the Constitutional Rights Claimed by Plaintiffs Were Clearly Established

Plaintiffs argue that "<u>any</u> form of retaliation for exercising speech . . . is clearly established as prohibited." Doc. 10 at 10.  But plaintiffs define the right far too generally—this broad, general definition runs afoul of the Supreme Court's oft-repeated edict that "'clearly established law' should not be defined 'at a high level of generality[.]'" *White*, 137 S. Ct. at 552 (quoting *al-Kidd*, 563 U.S. at 742).  Indeed, the Supreme Court has rejected similarly general definitions for First Amendment retaliation claims.  In *Reichle v. Howards*, plaintiff alleged that

defendants, members of Vice President Richard Cheney's Secret Service detail, arrested him in retaliation for telling the Vice President that his "policies in Iraq are disgusting," thus violating plaintiff's First Amendment rights.  566 U.S. 658, 661 (2012) (internal quotation marks omitted).  The Court granted *Reichle*'s defendants qualified immunity because the right allegedly violated was not clearly established.  *Id.* at 664–65.  Crucially, the Court rejected plaintiff's framing of his First Amendment right as "the general right to be free from retaliation for one's speech[.]" *Id.* at 665.  Instead, the Court made clear, plaintiff must show "the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause" was clearly established. *Id.*  Thus, here, plaintiffs' argument that "any form of retaliation for exercising speech . . . is clearly established as prohibited" fails because it doesn't reckon with defendant Whitesell's "*particular* conduct," *Mullenix*, 577 U.S. at 12 (quotation cleaned up), or "the specific context of the case," *Rivas-Villegas*, 142 S. Ct. at 8 (quotation cleaned up).

Next, the court considers whether plaintiffs' cited authority clearly establishes defendant Whitesell's conduct was unlawful.  The court concludes that plaintiffs' authority isn't a match— they have failed to identify precedent that places the "constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

*First*, when arguing Whitesell violated a clearly established right, plaintiffs cite several decisions by federal district courts.  *See* Doc. 10 at 9–10 (first citing *Youngblood v. Qualls*, 308 F. Supp. 3d 1184 (D. Kan. 2018); then citing *Warner v. Vill. of Ruidoso*, No. 12cv0627 MGA/GBW, 2013 WL 12329081 (D.N.M. Sept. 30, 2013); and then citing *Kucharik v. Garden City Cmty. Coll.*, No. 20-2190-KHV, 2021 WL 1840067 (D. Kan. May 7, 2021)).  But these cases cannot satisfy the clearly established standard; it requires plaintiffs to match the facts of this case with "an on-point Supreme Court or published Tenth Circuit decision that establishes

9

the unlawfulness of the defendant's conduct[.]" *Cummings*, 913 F.3d at 1239 (quotation cleaned up). So, plaintiffs' reliance on these cases is misplaced.

*Second*, plaintiffs cite cases that involve forms of retaliation that don't match the retaliation alleged here. Plaintiffs allege that defendant Whitesell retaliated against them when he visited plaintiffs' home, discussed the Facebook post with plaintiff Brittany Knudsen, and "indicated that it was causing problems, and told her it should be taken down."[1] Doc. 1 at 6–7 (Compl. ¶ 44). But in the cases cited by plaintiffs, law enforcement retaliated by making an arrest, or inspiring prosecution for a crime, or both. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 454 (1987) (describing conversation between plaintiff and police officers leading to plaintiff's arrest for violating an ordinance that prohibited willfully or intentionally interrupting a police officer); *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996) (discussing plaintiff's allegations "that defendants wrongfully filed charges against her and arrested her to . . . retaliate against her" for supporting political candidate); *Youngblood*, 308 F. Supp. 3d at 1190–91 (recounting plaintiff's arrest for disorderly conduct for extending his middle finger and yelling "F*** that mother******" at his neighbor's house). Or, in another one of plaintiffs' cases, the retaliation wasn't at the hands of law enforcement. *See Kucharik*, 2021 WL 1840067, at *6 (discussing alleged retaliation against plaintiff by members of a college board of trustees and college president). Plaintiffs allege defendant Whitesell retaliated with "threatened prosecution, bad faith investigation, and legal harassment," but they never allege that Whitesell threatened prosecution, investigated in bad faith, or harassed them. Doc. 10 at 7 (citing *Worrell*, 219 F.3d at

---

[1] Plaintiffs allege Whitesell told co-defendant Cantrell that plaintiffs "would be ticketed for harassment and/or witness intimidation." Doc. 1 at 6 (Compl. ¶ 42). But plaintiffs never allege that Whitesell made these threats to plaintiffs. Instead, plaintiffs merely allege that "Whitesell visited Plaintiffs' home, where he had a discussion with Plaintiff Brittany Knudsen about the Facebook post, indicated that it was causing problems, and told her it should be taken down." Doc. 1 at 6–7 (Compl. ¶ 44).

1212). The retaliation in these earlier cases simply doesn't match the "*particular*" retaliation alleged in this case. *Mullenix*, 577 U.S. at 12.

*Third*, not only is plaintiffs' authority on the retaliation allegations inadequate, but it's debatable whether defendant Whitesell's actions even amounted to retaliation. The second element of plaintiffs' constitutional claim requires plaintiffs to show that "defendant's action caused [them] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[.]" *Becker*, 494 F.3d at 925 (citing *Worrell*, 219 F.3d at 1212). Whether a government official's actions "chill" speech depends on the "difference between government expression and . . . intimidation—the first permitted by the First Amendment, the latter forbidden by it[.]" *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (Posner, J.). As an example of intimidation, the "Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (first citing *Hill*, 482 U.S. at 459 n.7; then citing *Steffel v. Thompson*, 415 U.S. 452, 462 (1974); and then citing *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Our Circuit has held that "physical and verbal intimidation, including a threat by a deputy sheriff to shoot [plaintiff] if he brought any more tax appeals" is enough to chill speech. *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007). But there's a distinct difference between the actionable retaliation in these conducts and plaintiffs' allegations here. Here, defendant Whitesell visited plaintiffs' home, discussed a Facebook post with plaintiff Brittany Knudsen, and "indicated that it was causing problems, and told her it should be taken down." Doc. 1 at 6–7 (Compl. ¶ 44). It's debatable whether these actions would chill a person of ordinary firmness, and therein lies the problem with plaintiffs' argument—plaintiffs must show the constitutional violation is "beyond debate." *al-Kidd*, 563 U.S. at 741.

11

Whether plaintiffs faced "a realistic threat of arrest" or "physical and verbal intimidation" isn't clear from their allegations. So, not every reasonable official would have understood that going to plaintiffs' home and telling them to take down the Facebook post violated plaintiffs' rights. *See Rivas-Villegas*, 142 S. Ct. at 7. This uncertain legal question also precludes the court from concluding that plaintiffs' rights were clearly established.

*Last*, plaintiffs' cited authorities involve First Amendment rights that don't match the First Amendment right invoked here. In *Van Deelen*, the First Amendment right in controversy was the right "to petition the government for the redress of tax grievances[.]" 497 F.3d at 1158. *Worrell* and *Lane* each involved plaintiff's First Amendment right to testify truthfully. *Worrell*, 219 F.3d at 1216 ("[T]he right to testify truthfully is clearly established[.]"); *Lane v. Franks*, 573 U.S. 228, 231 (2014) (holding that First Amendment "protects a public employee who provided truthful sworn testimony . . . outside the course of his ordinary job responsibilities"). *Wolford* involved plaintiff's First Amendment right to support a candidate for political office. 78 F.3d at 488 (describing plaintiff's allegations that she wrongfully was charged with embezzlement and forgery for supporting rival candidate for Sheriff). These cases don't match this case's allegations. They bear no connection to tax grievances, testimony, or political support. In sum, none of plaintiffs' cases clearly establish the unlawfulness of defendant Whitesell's conduct.

Instead, plaintiffs try to characterize their speech as criticism "of both the City of Spring Hill as well as Defendant Cantrell, an officer for the Olathe, Kansas police department." Doc. 10 at 10. Plaintiffs assert that "[s]peech, challenge, and criticism directed at police is . . . [a] clearly established" right. *Id.* at 9 (citing *Hill*, 482 U.S. at 461). But this characterization doesn't match the circumstances of this case. Plaintiffs don't allege that they criticized the police in their Facebook post. Instead, plaintiffs' post criticized defendant Cantrell for off-duty actions

12

unrelated to his employment with the Olathe Police Department.  *See* Doc. 10-1.[2]  Critically, the post doesn't criticize the alleged retaliator:  defendant Whitesell.  *See* Doc. 10-1 at 3 ("Responding Spring Hill Officers and the entire Spring Hill PD have been nothing but amazing during this whole situation.  They have been sympathetic to our loss, and have continually checked in on us to be sure we are holding up.  This is how a police department should be, and I am proud to have these officers protecting our community.  But unfortunately their hands are tied[.]").  Even if one construes plaintiffs' post as criticism of defendant Cantrell's actions as a police officer, the alleged retaliation is several degrees removed from that criticism.

Here, plaintiffs spoke about Cantrell in his capacity as a private citizen, then that speech resulted in a complaint by Cantrell, and then the Spring Hill police department dispatched defendant Whitesell to plaintiffs' home, where the alleged retaliation took place.  Yet, plaintiffs rely on cases where the police retaliated against plaintiffs for speech directed at police officers.  *Hill*, 482 U.S. at 453–54 (describing plaintiff's arrest for interrupting a police officer when he yelled at the officers to divert their attention away from a friend); *see also Warner*, 2013 WL 12329081, at *2–3 (describing Village of Ruidoso police retaliating against plaintiff in response to plaintiff's criticism of Ruidoso police); *see also id.* at *9 (concluding plaintiff's right to criticize the police on public streets was clearly established by *Hill*).  These cases don't match plaintiffs' allegations.  Plaintiffs allege that their speech was directed at another police officer and defendant Whitesell responded to a *complaint* from that police officer, not the speech itself.

---

[2] Both parties ask the court to consider the Facebook post.  Doc. 7 at 5 n.2; Doc. 10 at 6 n.2. Usually, on a motion to dismiss, the court can't consider evidence outside the pleadings.  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  But, "'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"  *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

In sum, plaintiffs' authorities aren't a match because they don't address the First Amendment in the specific context of a police officer visiting a home to intervene in a dispute between plaintiffs and a complaining citizen about a social media post. Plaintiffs haven't carried their burden to identify "an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct[.]" *Cummings*, 913 F.3d at 1239. They have failed to cite clearly established law showing Whitesell's conduct violated the First Amendment, so defendant Whitesell is entitled to qualified immunity against plaintiffs' § 1983 claims for retaliation violating plaintiffs' First Amendment rights (Counts I and II). The court thus grants defendant Whitesell's Motion for Judgment on the Pleadings (Doc. 6) on the claims asserted in Counts I and II and dismisses defendant Whitesell from this action.

**B.     Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims**

In addition to their federal claims against defendant Whitesell, plaintiffs assert three state law claims against defendant Cantrell. *See* Doc. 1 at 10–14 (Compl. ¶¶ 66–92). According to plaintiffs, defendant Cantrell is liable to them for: (1) assault of plaintiff Brittany Knudsen; (2) assault of plaintiff John Knudsen; and (3) conversion of plaintiffs' property. *See id.*

In part A, the court has granted judgment on plaintiffs' § 1983 claims against defendant Whitesell—the lone claims the court has original jurisdiction to decide. This just leaves plaintiffs' state law claims. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction[.]" Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting

14

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (explaining when pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction" (citations and internal quotation marks omitted)).  Also, notions "of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Our Circuit has expressed a preference that, when a district court dismisses all federal claims, it typically should decline to exercise supplemental jurisdiction over state law claims. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." (emphasis added)).  But still, the decision is committed to the district court's sound discretion.  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004).

The court concludes that judicial economy, convenience, and fairness do not favor the court exercising supplemental jurisdiction over plaintiffs' state law claims.  This case is in its early stages.  Plaintiffs' remaining claims require application of state law—presumably Kansas law.  A court created by Kansas law should decide them.  Exercising its discretion, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims in Counts III, IV, and V.  The court dismisses those claims without prejudice.

      **C.**      **Whether Defendant Whitesell is Entitled to His Costs and Attorney's Fees Under 42 U.S.C. § 1988**

Finally, defendant Whitesell's Motion for Judgment on the Pleadings (Doc. 6) asks the court "for his costs and attorney's fees pursuant to 42 U.S.C. § 1988[.]" *Id.* at 1. "Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). Defendant Whitesell invokes 42 U.S.C. § 1988(b), which allows the award of "a reasonable attorney's fee" to "the prevailing party" in a § 1983 suit. When the defendant prevails, "§ 1988 authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff[s'] action was frivolous, unreasonable, or without foundation.'" *Fox*, 563 U.S. at 833 (quoting *Christiansburg Garmet Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

Defendant Whitesell never argues that plaintiffs' action against him was frivolous, unreasonable, or without foundation. So, the court denies defendant Whitesell's request for his costs and attorney's fees under § 1988 (Doc. 6).

**IV.**      **Conclusion**

As explained above, defendant Whitesell's Motion for Judgment on the Pleadings (Doc. 6) is granted in part and denied in part. Whitesell is entitled to judgment in his favor against Counts I and II. The court thus dismisses Whitesell from this action because he is entitled to qualified immunity. The court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims—Counts III, IV, and V—and dismisses those claims without prejudice. But, Whitesell is not entitled to his attorney's fees and costs under the prevailing legal standards.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Whitesell's Motion for Judgment on the Pleadings (Doc. 6) is granted in part and denied in part. Defendant Whitesell is entitled to judgment against Counts I and II and is dismissed from this action.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' state law claims, Counts III, IV, and V, are dismissed without prejudice.

**IT IS SO ORDERED.**

**Dated this 25th day of January, 2022, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**